## Parsley v. Cassady.

## Stepp v. Horn.

Oct. 16, 1945.

604

John L. Harrington for appellants.

Joe Hobson for appellees.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

The appellant Parsley and the appellee Cassady were rival candidates for the Republican nomination for the office of clerk of the Martin County Court at the August Primary election. Appellee received a majority of the votes cast, the vote being 1177 to 1031.

The appellant Stepp and the appellee Horn were rival candidates at the same election for the office of sheriff of Martin County. Appellee received 1043 votes, appellant 696.

Within the time required by law, and on the same day, both appellants filed separate suits, contesting the nomination of their respective opponents on the ground that both Cassady and Horn had violated the Corrupt Practices Act, Chapter 123, KRS. Both appellees answered by denying they were guilty of violation of the Corrupt Practices Act, and, in turn, alleged violations of that Act by the contestants.

The regular judge, being a candidate for the Republican nomination for Circuit Judge at the same election, declined to preside at the trial of these cases, and the Honorable W. D. O'Neal, of Catlettsburg, was designated as special judge to hear and determine the issues involved.

These cases were tried together and have been considered together on one record on this appeal Many witnesses were introduced on both sides, and at the conclusion of the trial a judgment was entered dismissing the petitions of both contestants. These appeals follow.

We have carefully read the voluminous transcript of testimony and have reached the conclusion that the judgments are correct. In passing judgment upon the cases

Judge O'Neal delivered an opinion, which, after reciting preliminary facts, is as follows:

"The evidence tends to show that both contestants and both contestees were fairly liberal in the use of money to secure their respective nominations at the August Primary Election, and each were active and aggressive in getting out the votes and were actively assisted by friends, relatives and hired workers. Each placed money in some precincts in some instances questionable as to its intended purpose. There is some conflicting evidence and contradictory evidence shown in the record. It is shown that the candidates and their supporters in some precincts indulged in donations and collections for sick, afflicted and poor people on the election ground, which seems to be a custom, and should not be indulged in by candidates, however, when brought up before them puts them on the "spot" to be generous or considered otherwise. Some donations were indulged in by supporters of some of the parties contesting that evidently were unjustified and intended to influence voters. The contestants and contestees contributed money for cars and trucks to haul voters to the polls, which ordinarily would appear excessive, but under the condition of the roads and increase of costs generally arising from the war emergency the evidence tends to show that these amounts so expended under existing conditions were not unreasonable, or a violation of the Corrupt Practice Act. It is substantially shown that the contestant and contestees know the game of politics and how to put up a good fight. On the other hand both contestants and both contestees testified that they did not buy votes, authorize anyone to buy votes for them, or influence any one to vote with money or otherwise, or spend any money for illegal use in the election, and if any of their supporters so used money in their support it was without their procurement, consent or knowledge, and that it was necessary to spend such amounts to canvass the precincts and get out the votes. The question arises: Have the contestants, respectively, made a case against their respective opponents, the contestees, of violating the Corrupt Practice Act alleged in their petitions, sufficient to deprive the contestees of their nomination on the Republican ticket for Sheriff and County Court Clerk? And on the other hand, has such a case been made against the contestants?

606

So far as the record shows each of the contestants and each of the contestees are men of good character, influential and respected citizens. Three of them have been honored by holding elective County offices, and the other is a highly respected businessman. Their integrity and truthfulness is unimpeached and not questioned in the record, and taking the record as a whole, the Court is of the opinion that the evidence of the contestees and evidence of the contestants that they did not contribute or use money to buy votes or influence votes, that they did not so use the money themselves or authorize others to do so, and did not have knowledge that money was so used should be accepted as true.''

In Smith v. Ward, 280 Ky. 173, 132 S. W. 2d 762, and in other cases, this Court held that a judgment of the trial court in cases of this kind is to be treated on appeal as that of a chancellor rendering a like decision, and that in reviewing such a judgment we are not authorized to reverse it if we entertain no more than a doubt as to its correctness. A study of this record fails to create any such doubt. On the contrary, we fully agree with the findings as set forth in the opinion referred to, and that portion of the opinion quoted is adopted as our own.

Affirmed.